275 F.2d 188
 Anton FATOVIC, Appellee,
v.
NEDERLANDSCH - AMERIDAANSCHE STOOMVAART, MAATSCHAPPIJ, also known as Holland America Line, Appellant and Third-Party Appellee (Jarka Corporation, Third-Party Appellant).
 No. 106.
 Docket 25531.
 United States Court of Appeals Second Circuit.
 Argued January 5, 1960.
 Decided February 15, 1960.
 
 Chester A. Hahn, New York City (Sylvia Miller, New York City, on the brief), for appellee.
 Edmund F. Lamb, New York City (Purdy, Lamb & Catoggio, New York City, on the brief), for appellant and third-party appellee.
 Albert S. Commette, New York City (George Conway, New York City, on the brief), for third-party defendant-appellant.
 Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.
 LUMBARD, Chief Judge.
 
 
 1
 Anton Fatovic brought this action to recover damages for injuries he suffered on April 7, 1953 when struck in the hip by a cargo boom while working as a stevedore on the S.S. Veendam, a ship belonging to Holland America Line, and which was then docked at Hoboken, New Jersey. The complaint alleged both the unseaworthiness of the ship and the negligence of the defendant's servants as proximate causes of the accident. The defendant impleaded The Jarka Corporation, plaintiff's employer, claiming that Jarka was bound to indemnify defendant under their stevedoring contract, since the accident was caused by the negligence of Fatovic's fellow workers. The negligence claim against Holland America was dismissed at the close of the evidence, and the plaintiff's case was submitted to the jury solely on the theory of unseaworthiness. The jury returned a general verdict for Fatovic for $75,000 and a verdict in favor of Holland America over against Jarka in the same amount.
 
 
 2
 The dispositive question on appeal is whether the trial judge erred in charging the jury that the existence of certain conditions would have rendered the ship unseaworthy. We conclude that, as to at least two of the five conditions, there was no evidence from which the jury could have found that their existence made the ship unseaworthy. It was therefore error to submit the case to the jury on these claims, and we must reverse the judgment and order a new trial.
 
 
 3
 The evidence introduced at the trial showed that on the day of the accident Fatovic and six other stevedores were engaged in cradling the cargo booms of the Veendam prior to the ship's departure from Hoboken. The booms, each 38 feet long, were constructed so to move both vertically and horizontally, pivoting at the base upon a "gooseneck" about seven feet above the level of the deck. The gooseneck was built into a platform — the sampson table — which extended out from the "kingpost." A ladder ran up the kingpost to the sampson table. The booms could be moved horizontally either by the use of two guys which extended from near the head of the boom on each of its sides down to winches on the deck. By paying out cable on one guy while taking in on the other a boom could be swung around. In the present case, there was evidence, however, that one guy was lacking entirely. Alternatively, a boom could be swung by pulling upon the cargo rope, which hung down from the head of the boom. Two of Fatovic's fellow employees were engaged in swinging the boom in question by this latter method when the boom stuck. Three additional men lent assistance but the five pulling together on the cargo rope were unable to make the boom move further. The three other men then went back to other tasks. A few moments later, while the boom was still frozen, Fatovic was ordered to climb the ladder up the kingpost so as to detach a length of rope from the tackle there. When he had climbed to the fifth rung of the ladder and was about at the level of the sampson table, the boom suddenly broke free, swung clockwise 180 degrees, and struck Fatovic on the right hip, crushing him between the kingpost and the boom. The boom swung back a short distance and then struck him a second time.
 
 
 4
 There was also evidence that there was rust in the metal framework in which the gooseneck was housed, that there was no stopping arrangement to prevent the boom, if it were not held by the cargo rope or the two guys, from swinging full force against the kingpost, and that shortly after the accident the ship's instruments showed that the Veendam had a list of approximately one degree to starboard.
 
 
 5
 Upon this evidence, the plaintiff asserted and the court charged that there were five separate theories upon which the jury might find the ship unseaworthy.[1] First, plaintiff claimed that the absence of a guy on the starboard side of the boom prevented the use of the guys in swinging the boom. Second, plaintiff claimed that he climbed into a position of danger solely because the ship's tackle was defective in that a rope needed to be attached. Third, plaintiff said that the absence of a stopping arrangement to prevent the boom's swinging against the kingpost rendered the ship unseaworthy. Fourth, he claimed that the boom froze due to the rusty condition of the gooseneck, upon which it pivoted. Fifth and last, he claimed that the boom was defective in that it swung freely after it had frozen and that the slight list of the ship caused it to swing in the direction of Fatovic. We think that as to the third and fifth of these claims there was no evidence upon which the jury could have found that their existence created an unseaworthy condition.
 
 
 6
 There was no evidence of any kind in the record to support the view that a stopping arrangement could feasibly be constructed to prevent the boom from swinging against the kingpost or that its absence made the ship unseaworthy. Indeed, the only evidence on this point was given by one of defendant's witnesses who said that he had never seen or heard of such a device and doubted that one could be built without limiting the usefulness of the boom in loading and unloading cargo. In any event, the question was one of nautical architecture about which jurors lack the knowledge to form an intelligent judgment in the absence of expert testimony. Martin v. United Fruit Co., 2 Cir., 272 F.2d 347. Since there was no expert testimony on the matter, it should not have been submitted to the jury.
 
 
 7
 Nor was there any evidence to support the claim that the fact that the boom moved freely after it had frozen rendered the ship unseaworthy. The boom was supposed to move freely; ordinarily, one or two men could move it without difficulty. While the freezing of the boom might have rendered the ship unseaworthy, surely its subsequent free movement, possibly the result of the negligence of the stevedores in failing to maintain a firm hold on the cargo rope, could not. Moreover, there was no showing that the slight list of the ship, although it may have caused the boom to swing around as it did, made the ship unseaworthy. Indeed, the evidence was that a slight list of this kind was common and might have been caused by such a factor as the waves created by another ship passing near the Veendam.
 
 
 8
 The defendant and third-party defendant also assert that it was error to submit the other three claims of unseaworthiness to the jury. But we think that these were proper. The lack of a guy on the starboard side of the boom prevented use of the guys in turning the boom and the stevedores were thereby required to use the less secure method of pulling by hand upon the cargo rope. The evidence of rust in the housing of the gooseneck warranted an inference by the jury that this defect extended into the gooseneck itself and that it had been a cause of the freezing. Finally, although the evidence as to the tackle is rather unclear in the record, we think that the jury might have found that the tackle was improperly rigged by the ship's crew members and that the ship was unseaworthy as a result.
 
 
 9
 Since we cannot determine from the general verdict brought in by the jury whether they relied upon a proper or improper claim of unseaworthiness in reaching their decision, we must reverse the judgment and order a new trial. North American Graphite Co. v. Allan, 1950, 87 U.S.App.D.C. 154, 184 F.2d 387, 389; Travelers' Insurance Co. v. Wilkes, 5 Cir., 76 F.2d 701, 705, certiorari denied Hirsig v. Travelers Ins. Co., 1935, 296 U.S. 604, 56 S.Ct. 120, 80 L.Ed. 428.
 
 
 10
 Because there must be a new trial at which the question of indemnity between Holland America and Jarka may be presented in a different factual context, we do not now decide the issues as between these two parties.
 
 
 11
 Reversed and remanded for a new trial.
 
 
 
 Notes:
 
 
 [1]
 The relevant portion of the court's charge is as follows:
 "It is claimed that the vessel was unseaworthy in certain of its tackle; that there was no guy rope on the starboard side of the boom — that is the right side of the boom — and that the tackle attached to the topping lift was insufficient, being too short or improperly placed, requiring the attachment of an additional line by the plaintiff, as a result of which he climbed the kingpost into a position of danger. It is also claimed that an unseaworthy condition existed because of the absence of a stopping arrangement to prevent the boom from swinging up against the kingpost. It is further claimed that the boom itself was defective, in that it stuck or froze while the longshoremen were pulling it around to the cradle position. Finally, it is claimed that after the boom stuck, it proceeded to swing around either because of some defect in itself or because of the conditions of trim and list of the vessel, which thereby deviated from the level and facilitated the swing, and that this situation was aggravated by a movement of vibration of the vessel caused by engine trials.
 You must determine whether any or all of these conditions existed, and if so, whether or not they rendered the ship unseaworthy, that is, not reasonably fit for the operation of stripping the booms."
 Counsel for Holland America took due and proper exception to these portions of the charge.